**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| Terrace Housing Associates, Ltd., | : | |
| Debtor. | : | Bankruptcy No. 15-13368-MDC |

# MEMORANDUM

## I.    INTRODUCTION

In June 2017, Terrace Housing Associates, Ltd. (the "Debtor"), having successfully sought the reopening of its previously dismissed bankruptcy case, filed a motion for sanctions (the "Sanctions Motion")[1] against the United States Department of Housing and Urban Development ("HUD" and together with the Debtor, the "Parties").  The Sanctions Motion asserts that HUD violated the automatic stay imposed by §362 of the Bankruptcy Code[2] by taking steps to sell the Debtor's property in Oklahoma (the "Property") through a nonjudicial foreclosure sale while the Debtor's bankruptcy case was still pending.

Before the Court for disposition are motions for summary judgment filed by the Debtor and HUD.  Both the Debtor's motion for summary judgment (the "Debtor Summary Judgment Motion")[3] and HUD's motion for summary judgment (the "HUD Summary Judgment Motion" and together with the Debtor Summary Judgment Motion, the "Summary Judgment Motions")[4] seek summary judgment with respect to HUD's assertion that the equitable defense of laches

---

[1] Bankr. Docket No. 24.

[2] 11 U.S.C. §§101, *et seq.*

[3] Bankr. Docket No. 133.

[4] Bankr. Docket No. 135.

precludes the Debtor from pursuing the Sanctions Motion (the "Laches Defense").  Both

Summary Judgment Motions also address HUD's argument that the Court lacks subject matter

jurisdiction to address the Sanctions Motion (the "Jurisdictional Defense").[5]   Finally, the HUD

Summary Judgment Motion also asserts that the Court can rule on the pleadings with respect to

HUD's assertion that the sale of the Property was not a violation of the automatic stay because it

is excepted pursuant to §362(a)(8) of the Bankruptcy Code (the "Statutory Defense").

      For the reasons set forth herein, the Court will (i) grant the HUD Summary Judgment

Motion based on the Jurisdictional Defense and the Laches Defense, but not on the Statutory

Defense, and (ii) deny the Debtor Summary Judgment Motion.

## II.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

      The factual background underpinning the dispute between the Debtor and HUD is set

forth in the Memorandum Opinion of my former colleague, Judge Richard E. Fehling, dated

November 22, 2017 ("Laches Decision"),[6] as well as the Memorandum Opinion of the District

Court, dated December 3, 2018 (the "District Court Decision").[7]  The Court therefore will only

recite factual background to the extent relevant to disposition of the Summary Judgment

Motions.

      Judge Fehling, by the Laches Decision, concluded HUD had established the two essential

elements of laches that barred the Sanctions Motion: (1) that the Debtor had engaged in

---

[5] As discussed *infra*, this Court has been directed by the United States District Court for the Eastern District of Pennsylvania (the "District Court") to address both the Laches Defense and the Jurisdictional Defense.

[6] Bankr. Docket No. 59.  The Debtor's bankruptcy case was initially assigned to Judge Fehling, who presided over it until his retirement, whereupon it was reassigned to the undersigned on May 22, 2019.

[7] Bankr. Docket No. 80-1.

inexcusable delay in waiting approximately two years from the time its bankruptcy case was

dismissed, and approximately 21 months from the closing of the sale of the Property, to bring the

Sanctions Motion, and (2) that HUD was prejudiced by the Debtor's delay because it sold the

Property after the bankruptcy case was dismissed in reliance on the Debtor's apparent

acquiescence to the sale.  *See* Laches Decision, at §III.B.[8]

The Debtor appealed the Laches Decision, and the District Court remanded the matter to

this Court on the grounds that the Laches Decision did not discuss the burden of proof with

respect to the Laches Defense, and therefore the District Court could not address whether error

had been committed in allocating the burden.  The District Court Decision also noted that HUD

had raised the Jurisdictional Defense for the first time on appeal, and therefore directed this

Court to address that argument on remand.

Following remand, this Court scheduled an evidentiary hearing on the issue of laches,

and allowed the Parties to engage in fact discovery given that the issue was previously raised *sua*

*sponte* without prior discovery.  On July 22, 2022, the Parties filed their competing Summary

Judgment Motions.  The Court held a hearing on the Summary Judgment Motions on October

13, 2022, after which the Court took the matter under advisement.

## III.    DISCUSSION

### A.    Summary Judgment Standard

The standard for evaluating a motion for summary judgment is well-established:

> Summary judgment is appropriate only when, drawing all reasonable
> inferences in favor of the nonmoving party, there is no genuine issue as to

---

[8] Judge Fehling had raised the laches defense *sua sponte* at a hearing on the Sanctions Motion on August 23, 2017, and thereafter directed the Parties to submit briefs addressing its application.  *See* Bankr. Docket No. 46 and Bankr. Docket No. 49 (Transcript of August 23, 2017 Hearing, at 39:15 to 39:22).

> any material fact and the moving party is entitled to judgment as a matter of law.  *E.g., Tri-M Group, LLC v. Sharp*, 638 F.3d 406, 415 (3d Cir. 2011); *In re Bath*, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010).  In other words, summary judgment may be entered if there are no disputed issues of material fact, and the undisputed facts would require a directed verdict in favor of the movant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).
>
> In evaluating a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party.  *Id.* at 248.  In evaluating the record, the court must view the underlying facts and make all reasonable inferences therefrom in the light most favorable to the party opposing the motion.  *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013); *United States v. 717 South Woodward St.*, 2 F.3d 529, 533 (3d Cir. 1993).  On the other hand, if it appears that the evidence "is so one-sided that one party must prevail as a matter of law," the court should enter judgment in that party's favor.  *Anderson*, 477 U.S. at 252.

*Fraction v. Jacklily, LLC (In re Fraction)*, 622 B.R. 642, 646-647 (Bankr. E.D. Pa. 2020).

If the moving party bears the burden of proof were the matter to proceed to trial, the movant must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial.  *Lee v. 6209 Mkt. St., LLC (In re Lee),* 2022 Bankr. LEXIS 675, at *9 (Bankr. E.D. Pa. Mar. 15, 2022) (*quoting In re Polichuk*, 506 B.R. 405, 420-22 (Bankr. E.D. Pa. 2014)).  The evidence must establish all essential elements of the movant's case, and if this initial burden is met, the responding party must designate specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial.  *Id.*  When the non-moving party bears the burden at trial and the movant meets its burden of directing the court to items demonstrating the absence of a genuine issue of fact, the non-moving party must produce evidence sufficient to create a genuine

issue.  *Davenport v. Medtronic, Inc.*, 302 F. Supp. 2d 419, 435 (E.D. Pa. 2004).  That is, to

survive summary judgment, the nonmovant must "do more than simply show there is some

metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

### B.    The Parties' Arguments

#### 1.    The Laches Defense

##### a.    The Burden of Proof

In its Summary Judgment Motion, HUD acknowledges that laches is an affirmative

defense for which the burden of proof generally lies with the proponent, but asserts that the

burden shifts where the party seeking to bring an action or claim does so beyond "the most

analogous statute of limitations, which is the two-year state statute of limitations for claims

'sounding in trespass.'"  HUD Summary Judgment Motion, at 9.[9]  HUD then argues that even if

it is assumed that HUD has the burden of proof, the undisputed facts established through post-

remand discovery show the Sanctions Motion is time-barred by laches as a matter of law.

The Debtor argues that because laches is a defense, the burden of establishing both of its

---

[9] HUD also argues that affirmative defenses do not apply in contested matters pursuant to Federal Rule of
Bankruptcy Procedure 9014(c).  *Id.*  While the Court addresses HUD's other arguments *infra*, it pauses
here to reject this argument at the outset.  HUD's argument is apparently that because Bankruptcy Rule
9014(c) does not incorporate Bankruptcy Rule 7008, which itself incorporates Federal Rule of Civil
Procedure 8(c) addressing affirmative defenses that must be stated in a responsive pleading (including
laches), affirmative defenses and their traditional burdens do not apply.  Putting aside the illogic of HUD
asserting that affirmative defenses do not apply to this contested matter while asserting the affirmative
defense of laches, HUD's position simply is not the case.  Although F.R.C.P. 8(c)'s pleading requirement
with respect to affirmative defenses is not incorporated in Bankruptcy Rule 9014, the burden of proof
with respect to asserted affirmative defenses still applies in contested matters.  *See In re Eastern Fire
Protection, Inc.,* 44 B.R. 140, 142 (Bankr. E.D. Pa. 1984) (citing 3 COLLIER ON BANKRUPTCY ¶502.01 in
discussing the burden of proof applicable to claim objections under Rule 9014, including the burden of
establishing affirmative defenses); *In re de la Salle,* 2011 WL 10656821, at *4 (Bankr. E.D. Cal. Sept. 6,
2011) (same).

elements rests with HUD.  The Debtor objects to HUD's assertion that a state statute of

limitation for actions sounding in trespass would either bar the Sanctions Motion or represent a

benchmark time period after which the burden of disproving the Laches Defense would shift to

the Debtor.[10]  Rather, the Debtor argues, no state statute of limitations is relevant, and the only

issue is whether laches applies.  Moreover, to the extent a state-law statute of limitations is

relevant to which Party has the burden of proof on the Laches Defense, the Debtor argues it is

not one applicable to claims sounding in trespass, but rather is the six-year statute of limitations

under Pennsylvania law for proceedings that are not expressly subject to or excluded from

another limitations period.

### b.      Scope of Evidence to Be Considered

With respect to determining whether HUD has met its burden, the Debtor takes the

position that the District Court only directed this Court on remand to address the burden of proof

of laches and this Court's jurisdiction to resolve the Sanctions Motion: "[t]here is no suggestion

that the [District Court] thought or directed this court to conduct any further evidentiary

hearings."  Debtor Summary Judgment Motion, at ¶9.   The Debtor argues that, based on the

limited evidentiary record that was before Judge Fehling when he issued the Laches Decision,

there is no evidence in the record of either element of the Laches Defense, and therefore HUD

cannot meet its burden of proof as a matter of law.

HUD responds with three arguments to the Debtor's assertion that this Court is precluded

from considering evidence adduced through post-remand discovery on the Laches Defense.[11]

---

[10] *See* Bankr. Docket No. 140 ("Debtor's Summary Judgment Response").

[11] *See* Bankr. Docket No. 143.

First, HUD argues that the District Court did not restrict this Court's ability to permit further

factual discovery with respect to the laches defense, but rather, implicitly contemplated in the

District Court's directive was that the Court would engage in any factfinding needed to resolve

the laches issue.  Second, HUD argues it would be "absurd" to prohibit the discovery and

submission of facts related to the Laches Defense, given that laches was raised *sua sponte* by

Judge Fehling without a prior evidentiary record being made.  Finally, HUD argues that the

Debtor forfeited this issue by raising it at the summary judgment stage, after (a) the Parties and

the Court held two post-remand status hearings during which the need for discovery on the

Laches Defense was discussed, (b) the Parties each served interrogatories, and (c) HUD took the

deposition of Ms. Toth.[12]

### c.    Inexcusable Delay

With respect to inexcusable delay, HUD points to the deposition testimony and sworn

interrogatory response ("Interrogatory Response") of the Debtor's sole owner and managing

partner, Lisa Toth ("Ms. Toth"), to argue that the Debtor offers no acceptable excuse for bringing

the Sanctions Motion (a) more than two years after HUD advised Ms. Toth that the sale had

proceeded, (b) approximately two years from the dismissal of the Debtor's bankruptcy case, and

(c) approximately 20 months from the closing of the Property's sale.  Rather, HUD argues, Ms.

Toth made the mistaken assumption that HUD canceled the sale based on the Debtor's

bankruptcy filing and would instead reissue a notice of default and foreclosure.  HUD argues that

Ms. Toth's assumption, which she testified was based on what she believed was HUD protocol

---

[12] HUD also notes that the Debtor filed a motion to compel HUD to respond to the Debtor's
interrogatories, further undermining its argument that the District Court did not authorize or contemplate
such discovery.  *See* Bankr. Docket No. 120.

and her experience with other foreclosure sales she had observed where property owners filed for

bankruptcy, was not based on any communication she received from HUD, was not based on her

knowledge of any written protocol, and was not grounded in any categorical rule under which

HUD is obligated to or does in fact operate under.  HUD argues that Ms. Toth causing the Debtor

to operate under her assumption after the Debtor's bankruptcy case was dismissed, without

taking any steps to confirm that assumption despite her demonstrated knowledge as to how to

communicate with HUD regarding the sale, amounts to the Debtor sitting on its rights and failing

to exercise diligence, thereby establishing inexcusable delay for purposes of laches.  This is

made even more clear, HUD argues, because HUD informed Ms. Toth before the Debtor's

bankruptcy case was dismissed that it had proceeded with the collection of bids for the Property.

HUD argues that the Debtor did not raise this with Judge Fehling at any point before he

dismissed the bankruptcy case, and instead waited two years after dismissal to assert a stay

violation.

Although, as discussed *infra*, the Debtor takes the position that the evidentiary record

before Judge Fehling at the time of his Laches Decision dictates whether HUD has met its

burden with respect to the elements of laches, the Debtor argues that even the post-remand

evidence does not establish inexcusable delay.  According to the Debtor, Ms. Toth's deposition

testimony establishes that the Debtor's delay in asserting HUD violated the automatic stay was

based on Ms. Toth's correct understanding, based on her prior experience with other non-judicial

foreclosure sales, that HUD was required to cancel the sale upon the Debtor's bankruptcy filing

and reissue a notice of default.  In support of that testimony, the Debtor submits an affidavit from

Ms. Toth (the "Toth Affidavit")[13] discussing various federal statutes she believes required HUD

to cancel the sale and re-issue notice of default.  Toth Affidavit, at ¶¶7, 11. The Debtor argues

that Ms. Toth's "subjective belief that the sale would be canceled and rescheduled was therefore

perfectly logical, and was a reasonable basis for her uncertainty that the sale did in fact occur," in

light of "the fact that [whether] the sale went through was not readily ascertainable by Ms. Toth."

Debtor's Summary Judgment Response, at 13.

    HUD responds that the Toth Affidavit's "lay opinion on HUD statutes and regulations" is

irrelevant and incorrect.[14]   HUD points out that at her deposition, Ms. Toth testified that she had

no knowledge of whether HUD had any formal protocol requiring it to cancel the sale, and her

"after-the-fact justification has no bearing on whether her more-than-two-year delay was

excusable."  *Id.*  Moreover, HUD argues, none of the statutes and regulations cited required

cancelation of the foreclosure process under bankruptcy or non-bankruptcy law, including her

assertion that HUD was required to accept her offer to cure the default under the mortgage and

cancel the sale.  *Id.*

### d.        Resulting Prejudice to HUD

    With respect to prejudice HUD suffered as a result of the Debtor's delay, HUD first

points to Judge Fehling's determination in the Laches Decision that HUD was "clearly

prejudiced" because it relied on the Debtor's "apparent acquiescence in the sale," waited until

the bankruptcy case was dismissed to close the sale of the Property, and could not undo the sale.

*See* Laches Decision, at §III(b).  HUD argues that the undisputed facts established in post-

---

[13] Bankr. Docket No. 141.

[14] Bankr. Docket No. 144-1 ("HUD Sur-Reply"), at 5.

remand discovery support Judge Fehling's conclusion.

Relying on the declaration (the "Chochola Declaration")[15] of HUD's specialist on the Property's sale, Wil'Lwin Wallace Chochola ("Ms. Chochola")  HUD argues that had the Debtor timely challenged the sale of the Property as a stay violation, HUD would not have proceeded with closing the sale absent resolution of that issue.  However, because the Debtor's bankruptcy case was dismissed in June 2015 and there was no such pending challenge, HUD "was at liberty to process the sale to closing," thereby avoiding further delay and costs that would be incurred in cancelling the sale and restarting the process.  HUD Summary Judgment Motion, at 14.  HUD further argues that the prejudice it suffered by the Debtor's delay can be quantified by the carrying costs it incurred for the Property during the ten months it had possession of and was responsible for managing it: "'HUD paid over $150,000 in management fees, $9,521.95 for unpaid taxes, and over $524,000 for operating costs – which costs were far from offset by rents collected from tenants.'"  *Id.* (quoting the Chochola Declaration at ¶9).  HUD points to Ms. Toth's admission that, while she did not know how much HUD had to pay after taking possession of the Property, it would have been "at least thousands of dollars."  *Id.* (citing Ms. Toth's deposition transcript at 27:18 to 28:23).  As such, HUD argues, it is undisputed that HUD suffered prejudice for each additional day that it was required to continue to possess and maintain the Property, which would have continued had it been required to hold the Property while waiting for the Debtor to assert whatever rights it had with respect to the sale.

The Debtor responds that HUD has failed to meet its burden with respect to resulting prejudice.  The Debtor argues that any costs HUD was incurring in managing the Property could

---

[15] HUD Summary Judgment Motion, at Exhibit 7.

have been more than offset by raising rents at the Property in line with a "dramatically rising" rental market. The Toth Affidavit asserts that the Property's value increased "exponentially" after 2015, such that the $4.2 million sale price HUD obtained in September 2015 was dwarfed by the Property's asserted value of $13.2 million by January 2018 and $17.2 million by January 2020. Debtor's Summary Judgment Response, at 13-14.[16] Therefore, the Debtor argues, "far from suffering a financial detriment due to any delay by the Debtor until 2017 in contending the sheriff's sale was void, HUD should have welcomed the opportunity to resell the Property in 2017, and reaping a significant tremendous benefit by being able to sell the Property for a much higher price." *Id.* at 15. As such, the Debtor posits, the facts do not establish that HUD suffered economic detriment resulting from the Debtor's delay in prosecuting the Sanctions Motion.

HUD argues the Toth Affidavit only establishes that the Debtor sat on its rights, rendering HUD unaware of the Debtor's position and unable to protect HUD's rights, and does not refute the fact that HUD was incurring continuing management costs while possessing and maintaining the Property, instead offering impermissible speculation regarding those management costs.

### 2. The Jurisdictional Defense[17]

The Debtor's bankruptcy case was dismissed in June 2015 because the Debtor had filed its chapter 11 bankruptcy petition *pro se* and had failed to obtain counsel despite the Court

---

[16] The Debtor asserts, based on the Toth Affidavit, that the balance owing on the mortgage for the Property was less than $1.5 million, yet none of the surplus resulting from the $4.2 million sale price was paid to the Debtor. Debtor's Summary Judgment Response, at 14; Toth Affidavit, at ¶4.

[17] HUD largely relies on its prior briefing on the Jurisdictional Defense (the "HUD Brief on Remand"). *See* Bankr. Docket Nos. 110, 112.

issuing a show cause order.[18]  HUD argues that a dismissed case cannot be reopened under §350

of the Bankruptcy Code, and therefore this Court did not have jurisdiction to reopen the Debtor's

bankruptcy case in 2017 in order to permit the Debtor to file the Sanctions Motion, nor does it

have jurisdiction to adjudicate the Sanctions Motion now (other, presumably, than to grant HUD

summary judgment).  HUD further argues that the appearance of counsel on behalf of the Debtor

two years later seeking to reopen the dismissed bankruptcy case does not cure the jurisdictional

defect.

        The Debtor in its Summary Judgment Motion argues that this Court accepted jurisdiction

over the Debtor's bankruptcy case when it was filed in 2015, and reopened the case in 2017 upon

the Debtor's motion without opposition from HUD.  The Debtor notes that HUD did not seek a

stay or appeal the order reopening the case, and argues therefore that the Jurisdictional Defense

is without merit.  In response, HUD argues that the defense of lack of subject matter jurisdiction

cannot be waived, and can be raised at any time.

### 3.    The Statutory Defense

        HUD argues its collection and analysis of bids for the Property while the Debtor's

bankruptcy case was pending[19] did not violate the automatic stay because it was exempted under

§362(b)(8) of the Bankruptcy Code, which provides that a bankruptcy petition does not operate

as a stay of "the commencement of any action by the Secretary of Housing and Urban

Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed

---

[18] *See* Bankr. Docket Nos. 1, 3.

[19] Among the stipulation of facts the Parties agreed to are that (1) HUD had notice of the Debtor's
bankruptcy filing prior to the foreclosure bidding process, and (2) after bids for the Property were
received, HUD reviewed the high bid in terms of qualifications, amount, and receipt of deposits.  *See*
Stipulation of Facts, Bankr. Docket No. 44 (the "Stipulation of Facts").

of trust held by the Secretary is insured or was formerly insured under the National Housing Act

and covers property, or combinations of property, consisting of five or more living units."  11

U.S.C. §362(b)(8).  Because the undisputed facts show that HUD did not close on the sale of the

Property until over three months after the case was dismissed, HUD argues there was no

violation of the automatic stay as a matter of law.

The Debtor counters that §362(b)(8) is inapplicable to HUD's post-petition collection and

review of bids because the "commencement" of the foreclosure process occurred well before the

Debtor's bankruptcy petition was filed when a foreclosure commissioner was designated to

conduct a nonjudicial foreclosure sale.  According to the Debtor, the post-petition evaluation of

the bids was part of a sequence of events that together comprised the nonjudicial foreclosure

sale, and was more than a mere informal evaluation of bids and bidders.  The review of bids, the

Debtor asserts, therefore does not fall within the narrow exception articulated by §362(b)(8) and

constituted a stay violation that ultimately resulted in an invalid sale of the Property after the

bankruptcy case was dismissed.

### C.    Analysis

#### 1.    The Court Does Not Have Jurisdiction Over the Sanctions Motion

##### a.    The Jurisdictional Defense Was Not Waived

As an initial matter, the Court agrees with HUD that it did not waive the Jurisdictional

Defense by not asserting it when the Debtor sought to reopen the bankruptcy case in 2017.  *See*

*Brown v. Philadelphia Housing Authority,* 350 F.3d 338, 347 (3d Cir. 2003) (subject matter

jurisdiction is not a waivable defense and can never be waived) (citing *Ins. Corp. of Ireland, Ltd.*

*v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982), stating that a party does not

waive the requirement that a court has subject matter jurisdiction by failing to challenge it early in the proceedings); *see also Burton v. Schamp,* 25 F.4[th] 198, 207 (3d Cir. 2022) (same); *Huber v. Taylor,* 469 F.3d 67, 74 (3d Cir. 2006) (subject matter jurisdiction defense is not subject to the general rule that failure to raise an issue in district court results in its waiver on appeal) (citing *U.S. v. Cotton,* 535 U.S. 625, 630 (2002)).  Moreover, federal courts are obligated to insure that they have subject matter jurisdiction over disputes and may raise the issue *sua sponte. In re Ragland,* 2006 WL 1997416, at *3 (Bankr. E.D. Pa. May 25, 2006) (citing *In re Yousif,* 201 F.3d 774, 776 (6th Cir. 2000), *Liberty Mut. Ins. Co. v. Ward Trucking Corp.,* 48 F.3d 742, 750 (3d Cir. 1995), and *In re Hall's Motor Transit Co.,* 889 F.2d 520, 522 (3d Cir. 1989)).

The Debtor argues that "[t]he right to belatedly raise even a jurisdictional issue in a bankruptcy case may be waived by delaying unreasonably in raising it," and cites *In re Tribune Media Co.,* 902 F.3d 384, 393-94 (3d Cir. 2018) for support.  The portion of *Tribune* the Debtor cites first reviewed decisional authority holding that a party can, by its acts or omissions, impliedly consent to bankruptcy court jurisdiction, then held that the plaintiff, through his litigation of employment-based tort claims in the bankruptcy court, had impliedly consented to the court's jurisdiction over them.  *Id.*  To the extent the Debtor is asserting that HUD impliedly consented to this Court exercising subject matter jurisdiction, it offers no further argument in support.  Furthermore, the only substantive proceedings in the bankruptcy case between the time it was reopened in July 2017 and the time Judge Fehling entered the Laches Decision in November 2017 was the briefing and argument on the Sanctions Motion, which included argument and resolution of the Laches Defense.  Therefore, unlike the plaintiff in *Tribune* who chose to litigate in the bankruptcy court, here HUD only asserted defenses to the Sanctions

Motion, which Judge Fehling then denied based on the Laches Defense.  In that narrow and

relatively compressed procedural context, HUD did not impliedly consent to the Court's subject

matter jurisdiction over the Sanctions Motion, particularly where the default rule is that the

defense can be raised at any time.

>     **b.      Debtor's Dismissed Case Could Not Be Reopened, so the Court
>              Lacks Subject Matter Jurisdiction Over the Sanctions Motion**

HUD's argument that the Court could not reopen the Debtor's bankruptcy case in 2017

because it was dismissed in 2015 is well taken.  The language of §350(b) of the Bankruptcy

Code, authorizing a case to be reopened, provides that "A case may be reopened in the court in

which such case was **closed** to administer assets, to accord relief to the debtor, or for other

cause."  11 U.S.C. §350(b) (emphasis added).  The Debtor's case was dismissed, not closed.

And although a dismissed case may be reported as "closed" for statistical purposes, courts have

repeatedly recognized that a dismissed case is distinct from a case that has been closed pursuant

to §350(a), and therefore cannot be reopened under §350(b).  *In re Montique, Inc.,* 2003 WL

25947338, at *2 (Bankr. E.D. Pa. Jan. 31, 2003) (citing the reasoning of *In re Income Property

Builders, Inc.,* 699 F.2d 963 (9th Cir. 1982) in concluding that a bankruptcy court lacks authority

to reopen a previously dismissed case because it was never closed within the meaning of

§350(a)) (citing cases); *see also Iannini v. Winnecour,* 487 B.R. 434, 443 (W.D. Pa. 2012)

(dismissed case cannot be reopened under §350(b)); *In re Diloreto,* 388 B.R. 637, 643 (Bankr.

E.D. Pa. 2008) (reciting prior procedural history of the case whereby the court denied the

debtor's motion to reopen her dismissed bankruptcy case because it had never been closed under

§350(a), and therefore §350(b) could not apply) (citing *Income Property Builders*); *In re Ruffalo,*

652 B.R. 583, 586 (Bankr. S.D.N.Y. 2023) (a case can only be reopened under §350(b) if it was

fully administered and closed under §350(a), and the dismissal of a case achieves a very different

result from the closure of the case, "so the two cannot be conflated"); *In re Brooks,* 2018 WL

7355931, at *2 (Bankr. W.D. Okla. Feb. 6, 2018) ("Almost universally, courts have concluded

that Section 350(b) is inapplicable where a bankruptcy case has been dismissed rather than

closed.") (citing cases); *In re Mishoe-Hopper,* 2012 WL 5342148, at *2 (Bankr. E.D.N.C. Oct.

29, 2012) ("Although §350(b) grants bankruptcy courts broad discretion to reopen a closed case,

it does not allow the court to reopen a previously dismissed case.") (citing cases); *but see In re

Stewart,* 2020 WL 597843, at *1 (Bankr. D.C. Feb. 5, 2020) (finding that even though the case

was dismissed without a plan being confirmed, it was a closed case for purposes of §350(a) for

which a motion to reopen could be filed, but denying that motion) (citing *In re Ross,* 278 B.R.

269, 273 (Bankr. M.D. Ga. 2001)).

The Court agrees with the great weight of authority holding that a dismissed case is not

subject to reopening under §350(b) of the Bankruptcy Code.  The Court therefore did not have

authority to reopen the Debtor's bankruptcy case in 2017 pursuant to §350(b).[20]

---

[20] Although the Court views the weight of authority to be clear on this point, it is also clear that a party
can seek relief from an order dismissing a bankruptcy case under Federal Rule of Bankruptcy Procedure
9024 and Federal Rule of Civil Procedure 60.  *See, e.g., In re Snyder,* 292 Fed.Appx. 191, 192 n.2 (3d
Cir. 2008) (finding no abuse of discretion by the bankruptcy court in granting a creditor's motion to
reopen the debtor's dismissed bankruptcy case, because it "in essence … nullified the dismissal," and in
so doing appeared to have found the motion timely under Rule 60(b)(6) in light of the facts of the case);
*In re Coletta,* 380 B.R. 140 (Bankr. E.D. Pa. 2007) (treating a motion to reopen a dismissed bankruptcy
case in order to seek retroactive annulment of the automatic stay as a motion for relief from a dismissal
order under Rule 9024 because the motion was filed within a "reasonable time" as required by the rule);
*In re Walker,* 2005 WL 6522758, at *5 (Bankr. E.D. Pa. May 31, 2005) (characterizing it as "debatable"
whether courts can treat certain motions to reopen as implicitly seeking reconsideration of a dismissal
order under Rule 9024, but concluding that even if it was considered acceptable *arguendo,* such a motion
still must be timely under the rule).  Here, there is no indication that Judge Fehling treated the Debtor's
motion to reopen the case as one under Rule 9024 rather than §350(b), and even if this Court considers it
as a motion for reconsideration of the dismissal order, for the reasons discussed *infra* with respect to the
Laches Defense, such a motion was not "filed within a reasonable time" under Rule 60(c).  *See* F.R.B.P.

The question is whether that leaves the Court without subject matter jurisdiction over the

Sanctions Motion.  In *In re Ragland,* 2006 WL 1997416 (Bankr. E.D. Pa. May 25, 2006), my

former judicial colleague, Judge Bruce Fox, concluded that where a case has been dismissed, and

therefore is not subject to being reopened under §350(b), the court does not have subject matter

jurisdiction over disputes commenced after the case was dismissed.  *Id.* at *5.  First observing

the general rule that, in order for a bankruptcy court to have subject matter jurisdiction, a dispute

must be related to a pending bankruptcy case, Judge Fox reasoned that "In general, once the

underlying bankruptcy case is closed, the administration of the bankruptcy estate has terminated,

and so any proceeding or motion filed after the case has concluded falls outside of bankruptcy

court jurisdiction, unless the case is first reopened."  *Id.* at *4.  Judge Fox then reasoned that this

principle also applies to disputes filed after a case has been dismissed: "Although these two

bankruptcy cases were dismissed rather than closed, the principle that a bankruptcy judge has no

jurisdiction over a dispute filed after the case applies with equal force to dismissed cases … If

the dismissal of a case should typically result in the relinquishment of jurisdiction over a dispute

filed prior to dismissal, then, *a fortiori,* a bankruptcy court has no jurisdiction over disputes

commenced after the case has been dismissed." *Id.* at *5 (citing cases); *see also In re Walker,*

2005 WL 6522758, at *5 (Bankr. E.D. Pa. May 31, 2005) (same), *Iannini v. Winnecour,* 487

B.R. 434, 439 (W.D. Pa. 2012) (where a bankruptcy court does not explicitly retain jurisdiction

over an issue when dismissing a case, it thereafter presumptively lacks jurisdiction over the

issue).[21]

---

9024 and F.R.C.P. 60(c).

[21] There are certain exceptions to this jurisdictional bar in dismissed cases.  First, Judge Fox
acknowledged that §349(b)(3) of the Bankruptcy Code can provide a limited exception if the court orders

The Court finds this reasoning persuasive. Where a bankruptcy case is closed and the estate no longer exists, and where the case is not reopened for cause under §350(b), the bankruptcy court lacks jurisdiction to entertain any proceedings, irrespective of whether they are core or non-core. *In re Rashid,* 2004 WL 2861872, at *3 (E.D. Pa. Dec. 13, 2004) (quoting *Walnut Assocs. v. Saidel,* 164 B.R. 487, 491 (E.D. Pa. 1994)). There is no logical reason that would not also be the case with respect to a dismissed case. As such, because the Debtor's bankruptcy case was dismissed and could not be reopened, the Court does not have jurisdiction over the Sanctions Motion.

The Court is aware of two decisions from this jurisdiction that found either that subject matter jurisdiction was not lost upon dismissal or that lack of authority to reopen a dismissed case does not implicate subject matter jurisdiction. *See McCullough v. Chambers,* 2000 WL 502827, at *4-*5 (E.D. Pa. Apr. 25, 2000) (concluding that the debtor's voluntary dismissal of her bankruptcy case did not preclude the bankruptcy court from reasserting subject matter jurisdiction over a fee dispute between the debtor and her former counsel, based on the court's conclusion that "the rights of the parties were sufficiently intertwined with the underlying bankruptcy so as to warrant" exercising subject matter jurisdiction even though there was no live controversy at the time of dismissal); *Montique,* 2003 WL 25947338, at *2 (Bankr. E.D. Pa. Jan. 31, 2003) ("This conclusion [that dismissed cases cannot be reopened under §350(b)] is not based upon a lack subject matter jurisdiction; rather, there is no statutory basis to grant reopening

---

the retention of jurisdiction for cause. *Ragland,* 2006 WL 1997416, at *6; *see also Iannini v. Winnecour,* 487 B.R. 434, 439 (W.D. Pa. 2012). No such order was entered here upon dismissal of the Debtor's bankruptcy case in 2015. *See* Bankr. Docket No. 14. Second, courts are able to invoke ancillary jurisdiction post-dismissal to interpret and effectuate previous decrees. *Id.* at 441. Here, the Sanctions Motion does not seek or require any such action from the Court.

-18-

relief in this instance.") (citing *In re ASUSA, Inc.,* 47 B.R. 928, 930 (Bankr. S.D.N.Y. 1985)).

The Court does not find these non-binding decisions compelling.  Respecting *Montique*, Judge

Fox did not devote any additional analysis or discussion to the jurisdictional issue other than the

quote *supra,* and his subsequent decisions in *Walker* and *Ragland* appear to reflect that his

position on whether §350(b) is jurisdictional evolved over time.  Moreover*,* even if, as the

*McCullough* court concluded, the bankruptcy court does not lose subject matter jurisdiction over

future disputes when dismissing a bankruptcy case where they are "sufficiently intertwined" with

the bankruptcy case, this is not such a case.  The Sanctions Motion asserts HUD violated the

automatic stay by reviewing bids for the Property during the approximately three weeks the case

was pending, then selling the Property approximately three months after the case was dismissed.

However, unlike in *McCullough* or other cases that may be dismissed after at least some

administration of an estate, here there was not a substantive bankruptcy case ever being

administered.  The Debtor's case was dismissed shortly after it was filed for lack of authority.

As such, neither the Sanctions Motion nor any other conceivable motion the Debtor might have

brought could fairly be considered "sufficiently intertwined with the underlying bankruptcy" to

warrant the Court continuing to have subject matter jurisdiction.

> ### c.    The Debtor's *Pro Se* Bankruptcy Petition Did Not Render the Case Void *Ab Initio* and Automatically Leave the Court Without Subject Matter Jurisdiction

Lack of subject matter jurisdiction due to the inability to reopen a dismissed case under

§350(b) applies no matter the basis for dismissal.  HUD, however, also makes the argument that

because the Debtor's bankruptcy case was improperly filed by Ms. Toth, who is not an attorney,

and was subsequently dismissed due to that fact, the Court did not have jurisdiction over the

bankruptcy case in 2015 and did not acquire jurisdiction when the Debtor moved to reopen it in

2017.  The Debtor interprets HUD's argument to be that the filing of a corporate bankruptcy by a

non-attorney rendered the filing completely void, such that no automatic stay arose.  The Debtor

argues in response that the case was "accepted by the court and filed of record," and no court has

ever held that such a case deprived the court of subject matter jurisdiction to adjudicate a stay

violation.[22]  Although HUD does not outright state as much in the HUD Brief on Remand, the

Court (like the Debtor) understands HUD's argument on this point to be that because the

Debtor's 2015 *pro se* bankruptcy filing was improper, it was *void ab initio*, such that the Court

never acquired jurisdiction over a bankruptcy case that could subsequently be reopened to pursue

the Sanctions Motion.  *See* HUD Brief on Remand, at §II(A).

Based on the Court's research, there appear to be two schools of thought on *pro se*

bankruptcy filings.  The first employs the "nullity rule," and holds that such filings are void *ab*

*initio*.  *See, e.g., In re Poconos Land, LLC*, 343 B.R. 108 (Bankr. M.D. Pa. 2005) (finding that

*pro se* chapter 11 bankruptcy petitions by entities that were signed and filed by non-attorneys

were null and void because they constituted the unauthorized practice of law under Pennsylvania

law, and therefore were prohibited under §301 of the Bankruptcy Code in conjunction with

Bankruptcy Rule 9010(a)(2)); *In re Dick Tracy Ins. Agency, Inc.,* 204 B.R. 38 (D. Maine. 1997)

(the filing of a bankruptcy petition on behalf of a corporation by a non-attorney is the

unauthorized practice of law and any such petition should be dismissed as null and void); *In re*

*Global Constr. & Supply, Inc.,* 126 B.R. 573, (Bankr. E.D. Mo. 1991) (corporate chapter 11 filed

---

[22] The Debtor asserts that filings of corporate cases "are routinely accepted, albeit that such cases are
subject to dismissal prospectively, and, at the point of dismissal, automatic stay terminates prospectively
by operation of law."  *See* Bankr. Docket No. 109.  The Debtor cites no cases in support of this assertion.

by non-attorney president constituted the unauthorized practice of law and was therefore null and

void and could not be cured by the subsequent appearance of counsel because "a case … once

dismissed, ceases to exist"); *In re Bellerive Springs Building Corp.,* 127 B.R. 219 (Bankr. E.D.

Mo. 1991) (holding that a chapter 11 petition filed by a non-attorney president and sole director

of a corporate entity *pro se* was without legal force or effect and would be stricken); *see also*

*Doltz v. Harris & Assocs. Grooving, Inc.,* 2006 WL 359716, at *1 (E.D. Pa. Feb. 15, 2006)

(finding defendant corporation's pleadings a nullity because it was not represented by counsel);

*Leyfert v. Pa. House of Reps.,* 2005 WL 3433995, at *3 (E.D. Pa. Dec. 13, 2005) (finding the

court lacked jurisdiction over a lawsuit based on it being filed by a non-attorney on behalf of her

parents, and citing *Umstead v. Chase Manhattan Mortgage Corp.,* 2005 WL 2233554 (W.D. Va.

Sept. 13, 2005) for its holding that a complaint filed by power of attorney for a *pro se* plaintiff is

void *ab initio*).

 The second school of thought rejects the nullity rule and holds that a *pro se* bankruptcy

petition by an entity is not void *ab initio*, but rather is a defective filing that can be cured either

by the subsequent appearance of counsel or by amendment of the bankruptcy petition.  *See, e.g.,*

*In re AMRCO, Inc.,* 496 B.R. 442, 443 (W.D. Tex. July 29, 2013) (declining to follow decisions

holding *pro se* entity petitions are legal nullities that are void *ab initio*, instead treating that

deficiency as curable by the subsequent appearance of counsel); *In re Interiors of Yesterday,*

*LLC,* 284 B.R. 19, 26 (Bankr. D. Conn. 2002) (same).  In *In re IFC Credit Corp.,* 663 F.3d 315

(7th Cir. 2011), the Seventh Circuit rejected the argument that a *pro se* bankruptcy petition by an

entity signed by a non-lawyer concerns the bankruptcy court's subject matter jurisdiction.  *Id.* at

320.  The Court reasoned that subject matter jurisdiction is about a tribunal's legal empowerment

to decide a case, rather than about the mistakes that may be made in a case that is within the

tribunal's competence, and a bankruptcy case filed by a non-lawyer on behalf of an entity is an

example of a mistake made by a litigant in a case the bankruptcy court is empowered to

adjudicate. *Id.* The *IFC* court viewed the usual consequences of lack of subject matter

jurisdiction, *i.e.* (i) that it is not waivable until final judgment is entered and appellate remedies

are exhausted, and (ii) dismissal without prejudice, inappropriate in the case of a *pro se* entity

bankruptcy case, as illustrated by the problems dismissal presents if the jurisdictional defect is

discovered late in a protracted bankruptcy case. *Id.* (observing that deeming the *pro se* filing at

issue a defect of subject matter jurisdiction would require the corporate debtor to file a new

bankruptcy proceeding more than two years after the original (and amended) petitions).[23]

Rather, the court concluded that, while dismissal is proper at an early stage in order to implement

the rule against *pro se* entities, the defect can be corrected by the retention of counsel and the

amendment of the bankruptcy petition pursuant to Bankruptcy Rule 1009(a).  *Id.* at 321.

    The Court is persuaded by the logic of *IFC* and the other courts reasoning that a *pro se*

entity's bankruptcy case is not a nullity that is void *ab initio*.  As the *IFC* court reasoned, the

consequences of dismissal for lack of subject matter jurisdiction in a long-running bankruptcy

case where much has been litigated, resolved, or otherwise dealt with can be near impossible to

implement.  It is difficult, as the saying goes, to put the horse back in the barn in such a scenario

and untie what are often complicated judicial resolutions and actions long-since taken in an

---

[23] The court contrasted this consequence with the potentially beneficial consequence for a plaintiff in a lawsuit: "Requiring a do-over of a lawsuit is costly to everyone yet can actually benefit a plaintiff – the usual author of a jurisdictional mistake – because dismissal without prejudice allows a complete do-over if the plaintiff can refile his case without running afoul of the jurisdictional obstacle that wrecked his original claim." *Id.*

entity's bankruptcy case.  Retention of counsel and amendment of the petition as permitted under

Bankruptcy Rule 9010 obviates the need for any such unwinding.  In this case, Judge Fehling

contemplated the Debtor curing the *pro se* deficiency, having entered an order the day the

petition was filed providing that the Debtor was to either have counsel enter an appearance on

behalf of the Debtor by May 20, 2015, or alternatively to appear at a hearing on May 21, 2015 to

show cause why the Debtor's case should not be dismissed.[24]  The *ex post* retention of counsel

would not have been appropriate if the filing was void *ab initio.  See Interiors of Yesterday,* 284

B.R. at 25-26 (federal appellate courts generally permitting the retention of counsel to cure an

impermissible *pro se* filing by an entity is inconsistent with a void *ab initio* rule).  The Court

therefore finds, consistent with *IFC's* holding, that the defect in the Debtor's *pro se* filing did not

render the bankruptcy case void *ab initio* and render the Court without subject matter jurisdiction

over the case.  This finding disposes of HUD's argument that, because the defective pleading left

the Court without subject matter jurisdiction over the 2015 bankruptcy case, it could not ever

have jurisdiction over the Sanctions Motion if the case were reinstated after granting relief from

the order dismissing the Debtor's case (as opposed to reopening it under §350(b), discussed

*supra*).

> ### 2.    Even if the Court Has Subject Matter Jurisdiction Over the Sanctions Motion, Laches Bars the Debtor's Claim
>
> #### a.    The Burden of Establishing Laches Rests with HUD

As noted *supra,* the District Court remanded denial of the Sanctions Motion to this Court

on the grounds that the Laches Decision did not discuss the burden of proof with respect to the

Laches Defense.  The elements of the equitable defense of laches are (1) lack of diligence by the

---

[24] Bankr. Docket No. 3.

party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.

*E.E.O.C. v. Great Atl. & Pac. Tea Co.,* 735 F.2d 69, 80-81 (3d Cir. 1984).  Both elements must

be proven, and because laches is a defense, the defendant bears the burden on both.  *Id.*

HUD argues that this burden shifts, however, where the party seeking to bring an action

or claim does so beyond the most analogous statute of limitations, which HUD asserts is the two-

year state statute of limitations for claims sounding in trespass.  The Third Circuit has noted this

burden shifting: "If a statutory limitations period that would bar legal relief has expired, then the

defendant in an action for equitable relief enjoys the benefit of a presumption of inexcusable

delay and prejudice.  In that case, the burden shifts to the plaintiff to justify its delay and negate

prejudice." *Id.* (citing Third Circuit precedent).  In *Great A&P Tea Co.,* the Third Circuit noted

that no statute of limitations applied to the EEOC action before it, and therefore "the burden

remains on A&P to establish both elements of the defense." *Id.*

Notwithstanding that the Third Circuit in *Great A&P Tea Co.* did not shift the burden on

laches to the plaintiff because there was no limitations period applicable to an EEOC claim,

HUD cites a subsequent Third Circuit decision in *Santana Prod., Inc. v. Bobrick Washroom*

*Equip., Inc.,* 401 F.3d 123 (3d Cir. 2005) in support of its argument that here the burden should

shift to the Debtor to disprove the elements of laches.  In determining whether a Lanham Act

claim was barred by laches despite not being subject to a statute of limitations, the *Santana*

*Products* court found that the District Court properly used the most analogous statute of

limitation as a guideline for determining whether laches applied, reasoning that courts

"commonly use the appropriate statute of limitations as a guideline in claims for false advertising

under §43(a) of the Lanham Act." *Id.* at 135 (citing cases, including the Third Circuit's own

precedent in Lanham Act context in *University of Pittsburgh v. Champion Prods., Inc.,* 686 F.2d 1040 (3d Cir. 1982)).  The *Santana Products* court went on to state that "[b]ecause the Lanham Act does not specify a statute of limitation, courts must 'adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so.'  To do this, a court must 'characterize the essence of the claim in the pending case, and decide which statute provide the most appropriate limiting principle.'"  *Id.* (quoting *Wilson v. Garcia,* 471 U.S. 261, 266-67 (1985)).  The Third Circuit concluded that the District Court appropriately applied the six-year catch-all limitations period under Pennsylvania's Unfair Trade Practices and Consumer Protection Law.  *Id.*

At first blush the *Santana Products* decision supports HUD's argument that where there is no applicable statute of limitations to use as a guideline for determining whether a claim is presumed to be untimely, thereby shifting the burden of disproving laches to the plaintiff, courts should use the most analogous state law claim's statute of limitations as a guideline.  It is not clear to the Court, however, if *Santana Products'* holding was intended to be limited to the context of a Lanham Act claim.  Although the Third Circuit did not expressly limit it as such, each case the court cited was in the context of the Lanham Act.  The court did not address or otherwise note that it had not borrowed a state statute of limitations as a guideline in *Great A&P Tea Co.*, where there was likewise no applicable statute of limitation to the EEOC claim at issue, and the Court struggles to square the two approaches.

However, even if the Court is to borrow a state statute of limitations as a guideline for whether the Debtor's stay violation claim is untimely, the Court is not convinced that the most analogous statute of limitation is the two-year period for claims sounding in trespass, as HUD

argues.  Rather, because there is no statutory limitations period for stay violation claims under

§362(k), the Court agrees with the Debtor that the appropriate limitations period to use as a

guideline is found in 42 Pa.C.S. §5527(a)(ii)(2), providing that "Any civil action or proceeding

which is neither subject to another limitation specified in this subchapter nor excluded from the

application of a period of limitation by section 5531 (relating to no limitation) must be

commenced within six years."

Applying that six-year limitations period as a guideline to determine if the Debtor's stay

violation claim is presumed to be inexcusably delayed and prejudicial, thereby shifting the

burden of disproving laches to the Debtor, the Court finds it is not.  The alleged stay violation

occurred on May 13, 2015, when HUD accepted bids for the Property.  The Debtor sought to

reopen its bankruptcy case and pursue the Sanctions Motion in July 2017, well within the six-

year limitations period provided for under 42 Pa.C.S. §5527(a)(ii)(2).  Thus, the burden remains

with HUD to prove both elements of its laches defense.

### b.    This Court Was Not Precluded from Permitting a Fuller Factual Record on the Laches Defense on Remand

The Debtor is correct that the District Court Decision directed this Court to address the

burden of proof on laches on remand, and did not expressly direct this Court to further develop

the factual record with respect to the Laches Defense.  At the August 23, 2017 hearing on the

Sanctions Motion, Judge Fehling received testimony from Ms. Toth regarding her actions after

learning that HUD had collected bids for the Property the day after the Debtor's bankruptcy

filing. [25]  At the conclusion of that hearing Judge Fehling then directed the Parties to submit

briefs addressing the application of laches, and thereafter determined that the elements were met

---

[25] *See* Bankr. Docket No. 49 (Transcript of August 23, 2017 Hearing, at 13:20 to 16:6, 30:3 to 32:8).

based on the evidence.  *See* Laches Decision, at §III.B.  As such, although Judge Fehling did not address the burden of proof, he did find that the evidence established the elements of laches. Arguably, if the evidentiary record on remand is what existed at the time of Judge Fehling's decision, the Debtor and this Court are bound by his determination that the evidence before him established laches.

However, as noted *supra*, Judge Fehling raised the Laches Defense *sua sponte* at the hearing on the Sanctions Motion on August 23, 2017.  The Parties did not thereafter take any further discovery on the Laches Defense, and on remand the undersigned believed that such discovery was warranted.  **Both** Parties thereafter took discovery with respect to the Laches Defense.  It is therefore disingenuous of the Debtor to now assert that the evidentiary record on the Laches Defense was frozen as of Judge Fehling's Laches Decision.

Moreover, in directing this Court to address the burden of proof on remand, the District Court did not expressly or implicitly prohibit this Court from allowing discovery on laches in order to determine whether the burden had been carried.  As the court in *Gourley v. Usery (In re Usery),* 242 B.R. 450 (8th Cir. BAP 1999), *aff'd* 242 F.3d 378 (8th Cir. 2000) reasoned, "When a case has been decided … on appeal and remanded, every question decided by the appellate court, whether expressly or by necessary implication, is finally settled and determined, thus creating a mandate for the lower court.  The mandate of the appellate court is completely controlling as to all matter within its compass, *but on remand the trial court is free to pass upon any issue that was not expressly or impliedly disposed of on appeal.*  Moreover, the lower court is not bound by its own earlier rulings unless explicitly or implicitly adopted by the appellate court." *Id.* at 457 (emphasis added).  The District Court Decision did not explicitly or implicitly adopt Judge

Fehling's determination that the elements of the Laches Defense were met, and therefore this

Court is not precluded from revisiting those elements on remand and permitting discovery to aid

the Court in that determination.

### c.    HUD Has Established that the Debtor Inexcusably Delayed in Bringing the Sanctions Motion

Turning first to whether the Debtor inexcusably delayed in pursuing the Sanctions

Motion, HUD points to Ms. Toth's deposition testimony.  Ms. Toth testified that she contacted

the HUD attorney handling the foreclosure, Jack Stark ("Mr. Stark"), and his paralegal or

secretary, Carol Horton ("Ms. Horton"), on May 12, 2015, the day she filed the bankruptcy

petition, to provide HUD notice of the Debtor's bankruptcy filing.  Toth Depo. Trans., 31:2 to

31:12.[26]  She did so both by faxing certain documents to them and by speaking with Ms. Horton.

*Id.* at 31:17 to 32:1. Although slightly imprecise, Ms. Toth testified that she spoke with Ms.

Horton on two occasions within the week following the bankruptcy filing.  On May 13, 2015,

Ms. Toth inquired whether the Property was sold, and was told it was.  *Id.* at 32:5 to 33:15.

Following that conversation, Ms. Toth called Ms. Horton "probably about a week afterwards to

inquire again . . . And she said she would look into it, and someone would get back to me." *Id.* at

33:15 to 33:20.  Ms. Toth testified, however, that nobody from HUD ever did get back to her,

prompting her to follow up with a letter inquiring as to the status of the sale, to which she

received no response. *Id.* at 33:20 to 36:18.[27]

---

[26] The transcript of Ms. Toth's July 7, 2022 deposition is attached to the HUD Summary Judgment Motion as Exhibit 6.

[27] Ms. Toth further testified that "there may have been one other call or so," *see* Toth Depo. Trans., at 33:24 to 33:25, but she did not provide any further date or details regarding another call, and her testimony regarding her outreach to HUD centered on these two phone calls in the week following the bankruptcy filing and a subsequent letter.

When asked why she did not reach out to HUD beyond those inquiries to confirm that the
sale of the Property did not take place, Ms. Toth testified that she was "waiting for [HUD] to
send [her] something, some sort of notification in the mail." *Id.* at 37:3 to 37:5.[28]  According to
Ms. Toth, based on her experience it is not uncommon for HUD foreclosure sales to be canceled
because the owner had filed bankruptcy, with HUD reissuing a new notice of default and
foreclosure over about 18 to 20 months, so she "assume[d] the sale had been canceled."  *Id.* at
37:14 to 37:20; *see also id.* at 48:24 to 49:9 ("And I assumed HUD canceled the sale."); 63:3 to
63:9 ("I didn't know what to think because I was waiting for some sort of answer from HUD,
some sort of notice of default and foreclosure sale, something that would, you know, say
otherwise.  I assume[d] the sale had been canceled because I had filed the bankruptcy, and that
should have canceled the sale.  They ignored me.").

Ms. Toth conceded that HUD had not informed her that such a notice would be reissued.
*Id.* at 38:5 to 38:11.  She maintained however, that HUD "always" cancels a sale when a
bankruptcy is filed, so she thought the sale of the Property would likewise be canceled.  *Id.* at
38:21; 39:16 to 39:17; 43:23 to 44:16.  Notwithstanding her belief that HUD always cancels a
sale upon the owner filing for bankruptcy, however, Ms. Toth testified that when Ms. Horton
told her on May 13, 2015 that the sale had occurred, she understood that to mean "[HUD]
ignored my bankruptcy, my protective stay.  They ignored that and decided to just go forward
with the sale, even though I had filed the bankruptcy and the sale should have been canceled."
*Id.* at 40:17 to 40:21.

Ms. Toth explained that her basis for believing HUD cancels a property's sale upon the

---

[28] Ms. Toth also insinuated that she did not attempt to follow up with anyone at HUD other than Mr. Stark
and Ms. Horton because she viewed it as fruitless.  *Id.* at 45:19 to 46:5.

owner filing for bankruptcy, and then reissues a notice of default and foreclosure, is HUD

protocol and her prior experience.  *Id.* at 51:14 to 52:15 (confirming the statements made in her

Interrogatory Response).[29]  She did not know, however, whether HUD has such a protocol in

writing, and was not advised by any HUD employee that such a protocol existed.  *Id.* at 52:16 to

53:12.  Rather, her belief as to HUD's protocol was based on her personal observations in other

sales and conclusion that HUD would not want to violate the bankruptcy stay.  *Id.* at 53:13 to

54:6. As noted *supra,* in connection with its opposition to the HUD Summary Judgment Motion,

the Debtor submitted the Toth Affidavit discussing various federal statutes she believes required

HUD to cancel the sale and re-issue a notice of default.  Toth Affidavit, at ¶¶7, 11. [30]

Based on Ms. Toth's testimony and discovery HUD argues that the Debtor's delay in

filing the Sanctions Motion based on Ms. Toth's assumption the Property's sale would be

canceled due to the Debtor's bankruptcy filing, without being able to point to any HUD protocol

requiring such action and without receiving confirmation from HUD that her assumption was

correct, establishes inexcusable delay.  HUD argues the undisputed facts establish that the

---

[29] The Debtor's Interrogatory Response is attached at Exhibit 5 to the HUD Summary Judgment Motion.
The Debtor was asked to "Describe in detail all reasons why Terrace Housing Associates, Ltd., waited
until June 2017, to file the Motion to reopen the case and the Motion for Sanctions for alleged violation of
the automatic stay."  Debtor responded as follows: "Based upon HUD protocol and my prior experience
and knowledge, I was waiting for HUD to issue a new 'Notice of Default and Foreclosure Sale' to be sent
to or posted on the property.  Typically, it can take anywhere from 15 to 24 months to reissue this Notice.
When this Notice did not appear after 18 months, I started to inquire into the status of the Notice.  To my
surprise, I found out, in early 2017, from the Local Land Records Department that the property had been
transferred to the buyer by HUD.  At this point in time, I began searching for an attorney to see what I
could do, as I felt my rights had been violated."

[30] The prior sales Ms. Toth cited at her deposition were Buraya Apartments in Buraya, Maryland,
Stockton Village in Fort Stockton, Texas, and Westmoor Apartments in Toledo, Ohio.  *Id.* at 54:13 to
60:19.  The Toth Affidavit identifies four other alleged sales Ms. Toth asserts support her belief that HUD
"always" cancels foreclosure sales when an owner files bankruptcy.  Toth Affidavit, at ¶11.  The Court
notes, however, the affidavit does not state that Ms. Toth was aware of the alleged cessation of those sales
at the time she believed HUD would cancel the sale of the Property in 2015.

Debtor did nothing beyond Ms. Toth's isolated communications immediately after initiating the

Debtor's case to diligently assert its alleged rights during or after the case was dismissed.  This

delay, HUD argues, combined with her failure to assert her alleged rights is inexcusable.

The Debtor counters that Ms. Toth's assumption that HUD would cancel the sale was

based on her past experience with HUD foreclosure proceedings, and argues that HUD does not

effectively challenge the validity of that assumption.  In light of HUD's failure to advise her that

the sale had proceeded, the Debtor argues, "Ms. Toth's subjective belief that the sale would be

canceled and rescheduled was therefore perfectly logical, and was a reasonable basis for her

uncertainty that the sale in fact did occur."  Debtor's Summary Judgment Response, at §E.  The

Debtor also asserts that summary judgment in HUD's favor is not appropriate because it was not

readily ascertainable to Ms. Toth whether the sale went through.

To establish an inexcusable delay, the defendant must show that the plaintiff sat on his

rights.  *S.F. by K.F. v. Sch. Dist. of Upper Dublin,* 2021 WL 1979501, at *11 (E.D. Pa. May 18,

2021) (quoting *Beattie v. Line Mountain Sch. Dist.,* 992 F.Supp.2d 384, 396 (M.D.Pa. 2014)).

The Court finds, based on Ms. Toth's testimony and the Interrogatory Response, that there is no

genuine dispute the Debtor sat on its right to assert that HUD violated the automatic stay.  Ms.

Toth was advised that HUD proceeded with the Property's sale on May 13, 2015, two years

before the Debtor sought to reopen its case to pursue the Sanctions Motion.  This despite Ms.

Toth's professed belief that HUD was obligated to cancel the sale by its own policies, and that

the failure to do so was a violation of the automatic stay.  Ms. Toth conceded that HUD did not

advise her the sale had been canceled, and in fact the only communications she had with them

indicated it had not.  It is puzzling to the Court how Ms. Toth, particularly in light of her alleged

prior experience with HUD sales, could square being told on May 13, 2015 that the sale had

proceeded with her stated assumption that it had not.  Moreover, as HUD notes, Ms. Toth sought

reconsideration of Judge Fehling's order dismissing the Debtor's bankruptcy case, but failed to

raise HUD's stay violation while the case was pending, or at any point thereafter until two years

later.  Ms. Toth's Interrogatory Response, explaining the Debtor's delay in pursuing the

Sanctions Motion, states that when she hadn't received a reissued notice of default and

foreclosure *after 18 months*, she "started to inquire into the status."

The Debtor's actions, and lack thereof, do not constitute a diligent pursuit of its rights,

particularly in light of Ms. Toth's testimony that as of May 13, 2015, *i.e.* the day after the Debtor

filed bankruptcy, she believed HUD had violated the automatic stay.  The Court is convinced

Ms. Toth's own testimony and the Interrogatory Response is all the evidence needed to

determine that there is no dispute the Debtor sat on its right to assert HUD's sale of the Property

violated the automatic stay, and there was no credible excuse for doing so.[31]  As such, HUD has

established the inexcusable delay prong of the Laches Defense.

### d.     HUD Established It Was Prejudiced by the Debtor's Inexcusable Delay

HUD, in arguing that it suffered prejudice as a result of the Debtor's inexcusable delay,

points first to Judge Fehling's conclusion in the Laches Decision that HUD was clearly

prejudiced because it relied on the Debtor's acquiescence in the sale and waited until September

15, 2015, after the bankruptcy case was dismissed, to actually sell the Property.  HUD Summary

---

[31] As is the case with respect to the additional sales set forth in the Toth Affidavit, noted *supra*, Ms. Toth does not in her affidavit indicate that the statutes and regulations to which she cites informed her assumption that the sale of the Property would be canceled and a notice of default and foreclosure reissued.  *See* Toth Affidavit, at ¶¶7, 11.

Judgment Motion, at §III.C (quoting Laches Decision, at 10).  Bolstering that conclusion, HUD

argues, is the Chochola Declaration.

In the Chochola Declaration, Ms. Chochola states that she was involved in the sale of the

Property, which was a residential apartment complex with over 200 units.  *Id.* at ¶4.  Ms.

Chochola further states that HUD had been managing operation of the Property since November

2014, and was responsible for all expenses and upkeep of the Property.  *Id.* at ¶7.  According to

Ms. Chochola, in the ten months HUD managed the Property, it paid over $150,000 in

management fees, approximately $9,500 for unpaid taxes, and approximately $525,000 for

operating costs.  *Id.* at ¶9.  These costs were not offset by rents collected.  *Id.*  Ms. Chochola

states that following the collection of bids for the Property on May 13, 2015, HUD discontinued

the auction and sale process for the Property due to the Debtor's bankruptcy filing, but after the

case was dismissed in June 2015, HUD verified that the high bidder wished to proceed and

resumed the sale process.  *Id.* at ¶¶10-15.  HUD closed the sale of the Property on September 15,

2015, at which point ownership was transferred to the high bidder, which to Ms. Chochola's

knowledge went unchallenged until the Sanctions Motion was filed.  *Id.* at ¶¶18, 19.  According

to Ms. Chochola, based on her extensive experience with HUD sales, "had there been a

legitimate challenge to the validity of the sale of the Property, such as a pending bankruptcy,

HUD would not have closed the sale of the Property without some resolution that the closing was

legally permissible."  *Id.* at ¶17.

The Debtor responds that HUD relies on selective allegations about its costs in

unprofitably maintaining the Property, without addressing that the market would have supported

raising rents at the Property.  *See* Toth Affidavit, at ¶11.  The Toth Affidavit also asserts that

property values in Oklahoma City, including the Debtor's Property, were increasing from 2015

through 2020.  *See* Toth Affidavit at ¶12(C) (asserting the Property's market value increased

from the sale price of $4,200,000 in September 2015 to $17,256,250.00 on January 23, 2020

based on alleged the Federal Home Loan Mortgage Corporation Loan to Value metric).

According to Debtor, rather than sell the Property in 2015 to mitigate the alleged financial

detriment it was suffering in holding the Property, "HUD should have welcomed the opportunity

to resell the Property in 2017, and reaping a significant tremendous benefit by being able to sell

the Property for a much higher price."  Debtor's Summary Judgement Response, at §E.[32]

The party asserting laches must establish prejudice by demonstrating that the delay

caused a disadvantage in asserting and establishing a claimed right or defense; the mere loss of

what one would have otherwise kept does not establish prejudice.  *U.S. Fire Ins. Co. v.

Asbestospray, Inc.,* 182 F.3d 201, 208 (3d Cir. 1999).  The Court believes the undisputed facts

establish the prejudice HUD suffered as the result of the Debtor's inexcusable delay.  To recap

the delay, HUD notified Ms. Toth on the day after the Debtor's bankruptcy was filed, May 13,

2015, that sale of the Property had proceeded that day.  Ms. Toth testified that she believed this

violated the stay.  Yet the Debtor did nothing to assert there had been a stay violation prior to or

after its case was dismissed, notwithstanding that Ms. Toth appeared before Judge Fehling and

filed other pleadings in an attempt to save and then resurrect the Debtor's bankruptcy case.[33]

More than three months after the case was dismissed, and in the absence of any legal challenge

---

[32] HUD replies to Ms. Toth's valuation and cost allegations are nothing but speculation that do nothing to contradict that HUD incurred costs while in possession of the Property, which Ms. Toth conceded in her deposition.  HUD Sur-Reply, at 4.

[33] *See* Bankr. Docket Nos. 12, 15, 19.

to the sale of the Property having proceeded on May 13, 2015, HUD closed on the sale.  Only

after nearly two years had passed since its case was dismissed did the Debtor then assert for the

first time that the sale violated the stay.

Although the Parties focus their arguments on what the effect would have been had HUD

been required to hold on to the Property while waiting to determine whether the Debtor intended

to assert the sale was stayed, the Court believes this is not the proper inquiry.  Prejudice for

purposes of laches is established by demonstrating that the delay caused a disadvantage in

asserting and establishing a claimed right or defense; the costs HUD saved by selling the

Property, or alternatively, the additional amounts it could have recovered had it held the

Property, do not go to whether HUD lost the ability to assert a right or defense.  If anything, they

go to "the loss of what [HUD] would have otherwise kept," *i.e.*, the opportunity to rid itself of

the Property and its associated expenses, which the Third Circuit has noted does not establish

prejudice.  *Asbestospray, Inc.,* 182 F.3d at 208.[34]

The Court, however, believes Judge Fehling's focus in the Laches Decision on the effect

the Debtor's delay had on HUD's ability to protect itself from a claim for stay violation or

liability for damages is consistent with the standard for establishing prejudice.  As Judge Fehling

reasoned: "HUD cannot undo the sale of Debtor's Property.  Had Debtor raised the stay violation

issue in a prompt fashion, HUD could have minimized or avoided its exposure to Debtor's claim.

HUD may have decided not to proceed with the sale without first resolving Debtor's stay

violation claim.  HUD could have obtained a protective order granting it relief from stay.  HUD

---

[34] These arguments may go to prejudice in a more general sense, but the Third Circuit's view of prejudice in the context of laches is more narrowly tailored to the delay's effect on the assertion of rights or defenses.

could have sought a nunc pro tunc order [granting] it retroactive relief from the stay.  HUD could

have taken other steps to protect itself in some other fashion.  Instead, HUD relied on Debtor's

silence and apparent acquiescence with the sale."  Laches Decision, at III.B.  The undersigned

agrees with Judge Fehling's conclusion that the prejudice to HUD was established; the Debtor's

delay caused a disadvantage to HUD in being able to take actions or refrain from taking actions

during and after the dismissal of the Debtor's case to eliminate or minimize the risk of a claim

that it was in breach of the automatic stay.  As such, the second element of HUD's Laches

Defense is established, and HUD is entitled to summary judgment on the Laches Defense.

### 3.     Summary Judgment is Not Appropriate on the Statutory Defense

The Parties have both briefed whether HUD is entitled to summary judgment on the

Statutory Defense, *i.e.,* whether HUD collecting and reviewing bids for the Property on May 13,

2015 is excepted from the automatic stay under §362(b)(8) of the Bankruptcy Code.  As

discussed *supra,* that section exempts "the commencement of any action by the Secretary of

Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which

the mortgage or deed of trust held by the Secretary is insured or formerly insured under the

National Housing Act and covers property, or combinations of property, consisting of five or

more living units." 11 U.S.C. §362(b)(8).

There is no genuine dispute that the mortgage for the Property was insured under the

National Housing Act, was held by HUD, and covered a property exceeding five units.  *See*

HUD Brief on Remand, Ex. A to C; Stipulation of Facts at ¶2.  The only question with respect to

whether HUD is entitled to summary judgment on the Statutory Defense is therefore whether

HUD's collection and review of bids while the Debtor's bankruptcy case was pending constitutes

the commencement of a foreclosure action.

The Debtor argues that the commencement of the foreclosure action occurred well before the Debtor's bankruptcy filing on May 12, 2015, and therefore the collection and review of bids post-petition falls outside the clear language of §362(b)(8).[35]  The Debtor cites as factual evidence the deed transferring the Property to the purchaser on September 15, 2015 (the "Deed"), which states that following default a foreclosure commissioner was designated, notice of default was issued, sale of the Property was advertised, and on May 13, 2015 the purchaser submitted the highest approved bid for the Property.  *See id.* (citing Exhibit C-4 from the August 23, 2017 hearing on the Sanctions Motion).  The Debtor asserts this sequence of events exhibits that the post-petition receipt and evaluation of bids was "part of a sequence of foreclosure commenced well prior to May 13, 2015," and does not fall within the carefully limited scope of §362(b)(8)'s exception.  *Id.* (citing *In re Adana Mortg. Servs., Inc.,* 12 B.R. 989, 998 (Bankr. N.D. Ga. 1980) and various treatises).

HUD responds that, although it received bids during the pendency of the bankruptcy, there is no evidence that it took any action in furtherance of the Property's sale other than to review bids, that receiving and reviewing the bids interfered with or took advantage of the Debtor, or that doing so was outside the purpose of §362(b)(8).  HUD Brief on Remand, at §II.C.1.  It disregards the Deed's recitals of the events leading to the sale as "semantics and nomenclature" that the Debtor hangs on to compensate for the absence of facts and legal support for the position that HUD's post-petition actions fall outside §362(b)(8)'s exception.  *Id.*  HUD argues that its "internal review of bids and other paperwork by HUD" cannot be deemed a

---

[35] See Bankr. Docket Nos. 109, 111 ("Debtor Brief on Remand"), at §D.

forbidden continuation of the foreclosure process in light of the purpose of the automatic stay to give debtors a breathing spell from creditors. *Id.*

The Court is doubtful of HUD's interpretation of §362(b)(8). *See* 3 COLLIER ON BANKRUPTCY ¶362.05[8] (Richard Levin & Henry J. Sommer, (16th ed.) ("Although the [HUD foreclosure] action may be commenced, the exception does not permit the continuation of actions commenced before or after the date of the commencement of the bankruptcy case.") (citing the legislative history found at 124 Cong. Rec. H11866 (daily ed. Oct. 6, 1978)). However, the Court does not believe a clear factual record exists as to what actions HUD took pre-petition with respect to the foreclosure process, and therefore whether its post-petition actions were the commencement of the process or the continuation of the process. While the Debtor relies on recitals in the Deed to establish HUD's pre-petition acts, the Court does not view those recitals as authoritative evidence.[36] They do, however, raise a material factual dispute as to the nature and extent of HUD's pre-petition actions, which carries import with respect to the legal question of whether §362(b)(8) applies. As such, summary judgment in favor of HUD on the Statutory Defense is not warranted.[37]

## IV.    CONCLUSION

For the reasons discussed above, the Court will (i) grant the HUD Summary Judgment Motion based on the Jurisdictional Defense and the Laches Defense, but not on the Statutory Defense, and (ii) deny the Debtor Summary Judgment Motion. An Order consistent with this

---

[36] To the extent Debtor wants them treated as admissions by HUD, no foundation for that has been established.

[37] Because, however, the Court finds that summary judgment in HUD's favor is warranted with respect to both the Laches Defense and the Jurisdictional Defense, no trial is necessary with respect to the Statutory Defense.

Memorandum will be issued.


Dated:  October 25, 2023

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE


David A. Scholl, Esq.
Law Office of David A. Scholl
512 Hoffman Street
Philadelphia, PA 19148

Matthew E.K. Howatt, Esq.
Assistant U.S. Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

United States Trustee
Office of the United States Trustee
Robert N.C. Nix Federal Building
Suite 320
Philadelphia, PA 19107